20 Ency. Pl. & Pr. 771; Smith v. Rathbun, 66 Barb. 402; Davis v. Peabody, 170 Mass. 397, 49 N. E. 750.

The interlocutory judgment should be affirmed, with costs, with leave to the appellants to withdraw their demurrer and answer on payment thereof and within 20 days.

O'BRIEN, P. J., concurs.

McCREA v. ROBERTSON et al.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

Appeal from Special Term, New York County.

Action by William G. McCrea against Thomas B. Robertson and others. From an interlocutory judgment overruling a demurrer to the complaint, defendants appeal. Reversed, with leave to amend.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRA-HAM, CLARKE, and HOUGHTON, JJ.

George H. Taylor, Jr., for appellants.
B. F. Gerding, for respondent.

INGRAHAM, J.   The question in this case is the same as that presented in the case of William G. McCrea v. James McClenahan, as executor, etc. (decided herewith), 99 N. Y. Supp. 689, and for the reasons there stated the judgment appealed from must be reversed, with costs, and the demurrer sustained, with costs, with leave to the plaintiff to amend the complaint upon payment of costs in this court and in the court below.

McLAUGHLIN and HOUGHTON, JJ., concur.

CLARKE, J.   I dissent for the reasons stated in the dissenting opinion in McCrea v. McClenahan.

O'BRIEN, P. J., concurs.

TRUESDELL v. ERIE R. CO.

(Supreme Court, Appellate Division, First Department.   June 15, 1906.)

1. CARRIERS—SETTING DOWN PASSENGERS—DUTY OF CARRIER.
    It is the duty of a carrier to afford passengers reasonably safety in alighting from trains by either affording a reasonably safe place and facilities therefor, or by warning and aiding them in alighting.
    [Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 1142, 1224–1232.]

2. SAME—DUTY OF PASSENGER ALIGHTING FROM TRAIN.
    It is the duty of a passenger in alighting from a train to exercise the care and caution of a reasonably prudent person, with the knowledge possessed by him regarding the place and circumstances.
    [Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 1385.]

3. SAME—NEGLIGENCE—CAUSE OF INJURIES—SUFFICIENCY OF EVIDENCE.

In an action against a carrier for injuries received by plaintiff while alighting from a train by reason of defendant's alleged negligence in failing to provide a safe place for passengers to alight, evidence that there were holes or depressions in the surface of broken stone or gravel used as a platform for passengers to alight on did not warrant a finding that such holes or depressions caused the injuries.

4. SAME—EXCESSIVE HEIGHT OF CAR STEPS—FAILURE TO PROVIDE PLATFORM OR STEPPING BOX.

A carrier, the steps of whose car are so high that passengers cannot conveniently alight by stepping down, is negligent in failing to furnish a platform or stepping box, or to assist passengers in alighting, or to warn them of the danger, and assure them that they will be afforded ample time to alight.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 1230-1232.]

5. SAME—CONTRIBUTORY NEGLIGENCE—JUMPING FROM STEPS OF CAR.

Where the steps of a car were so high that passengers could not conveniently alight by stepping down, negligence could not be imputed as a matter of law to a passenger, who, having a right to alight, determined that he could alight with greater safety by jumping than in attempting to step down.

6. EVIDENCE—PREPONDERANCE.

In an action against a carrier for injuries to a passenger while alighting from a train through the alleged negligence of defendant in failing to provide facilities for alighting, testimony of defendant's conductor and other witnesses, who measured the height of the car step above the rail, to the effect that it measured exactly 14 inches, preponderated over testimony of plaintiff, and a witness, neither of whom measured the height of the step, that the same was 2 or 2½ feet high.

7. CARRIERS—INJURY TO PASSENGERS—CONTRIBUTORY NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

In an action against a carrier for injuries to a passenger while alighting from a car, evidence examined, and held insufficient to show plaintiff's freedom from contributory negligence.

O'Brien, P. J., and Patterson, J., dissenting.

Appeal from Trial Term, New York County.

Action by Clara I. Truesdell against the Erie Railroad Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed.

This is an action by a passenger against a common carrier for personal injuries alleged to have been sustained by her in alighting from one of defendant's passenger cars at Forest Hill, N. J., owing to defendant's negligence in omitting to have a proper platform at its said station upon which passengers might alight, and in omitting to have the landing place properly lighted, and in failing to have a stepping box for the use of passengers, and in failing to have an employé stationed at the landing place to give assistance to the passengers, or warning of the danger in alighting from its trains. The plaintiff is an unmarried woman, 32 years of age, and at the time of the accident resided at Forest Hill, in the city of Newark, N. J. She held a position as stenographer in New York. She had resided at Forest Hill 11 years, and during that period she had been accustomed to go back and forth to New York almost daily over defendant's railroad and ferry. On the 9th day of September, 1902, in company with Addison B. Truesdell, a cousin, she left Jersey City on the defendant's local train at 7:17 in the evening, and arrived at Forest Hill station at about 7:38 p. m. The train consisted of a locomotive and four cars, a baggage and combination smoking car next to the engine, then two ordinary day coaches, and an extra smoker in the rear. The plaintiff and her com-

panion boarded the third car from the rear platform, and took a seat about
midway of the car. When the train stopped at Forest Hill for passengers to
alight, it was standing on the west-bound main track, which was the most
northerly track. The station is on the south side of the tracks. There was a
platform extending along the southerly side of the east-bound track in front
of the station, and a considerable distance beyond either end, but there was
and had been no platform between the tracks, or to the north of the west-
bound track. During all this period the defendant had been accustomed to
discharge passengers from its west-bound trains upon the ground between the
two tracks, and with this custom the plaintiff was thoroughly familiar, as
she had alighted from cars at that point both in the daytime and in the even-
ing almost daily, except Sundays, during the entire period. When the train
stopped, the plaintiff, preceding her companion, passed to the front of the car,
and out upon the platform and down the steps on the south side, where, ac-
cording to her evidence, one or more passengers had preceded her in alighting,
and according to the evidence introduced by the defendant many passengers
had preceded her, and were assisted by the conductor. She testifies that she
saw the conductor standing near the steps from which she was alighting, but
a little to her right or toward the front of the train, and opposite the bumpers
between the car on which she was riding and the next car, and that he had
no lantern. She had a parcel in one hand. After reaching the lower step,
and standing with both feet upon it, she determined that the step was so high
that she would jump, and she did jump, and in doing so she fractured the
fibula of her right ankle. This action is brought to recover the damages thus
sustained. According to her testimony, which was corroborated by the testi-
mony of other witnesses, the ground between the tracks where passengers were
accustomed to alight was covered with broken stone or gravel, level with the
ties, but having holes or depressions therein at different places, varying from
four inches in depth to a "mere sag," caused principally by the exhaust steam
from the engine. The testimony introduced by the defendant, however, tended
to show that the broken stone was covered with fine stone dust, which gave it
a hard smooth surface, filled in on a level with the top of the rails. The plain-
tiff did not testify that the ground was uneven where her foot landed, or that
she stepped in a hole or depression, or slipped. The plaintiff testified that at
Jersey City, where the platform was level with the rails, she discovered that
the step of this car, as she was going upon it, was about 2 feet high, and that
it was over 2 feet where she alighted. According to the testimony of her cous-
in the step was 2 or 2½ feet high. It does not appear, however, that either
the plaintiff or her cousin measured the height of the step, and it is evident
that their testimony is a mere expression of opinion on that point. According
to the testimony of the conductor and several other witnesses called by the
defendant, who measured the height of this step above the rail, it measured ex-
actly 14 inches above the rail, and was about the ordinary height of steps on
passenger cars. According to the testimony of the plaintiff, the space between
the tracks where passengers were alighting was not well lighted. There is
evidence that it was then between daylight and dark, and there is also evidence
that it was quite dark. The plaintiff also testified that no stepping blocks or
boxes were in use at that place, and that she had never before jumped from
the step of a car. She testified that she was 5 feet 3 inches in height, and
weighed about 138 pounds, and the reason she assigned for jumping was, "to
use a vulgar expression, I could not straddle down that step; it was too high."
At the close of the plaintiff's case, the defendant moved for a nonsuit, upon
the ground that the plaintiff failed to show that she was free from contribu-
tory negligence, or that her injuries were due to negligence on the part of
the defendant, and at the close of all of the evidence moved for a dismissal
of the complaint on the same ground. The motions were denied, and counsel
for the defendant excepted. Counsel for the defendant at the close of the main
charge requested the court to instruct the jury "that, if the plaintiff was in-
jured in consequence of the jump, and not because of any depressions in the
ground or holes at the place where she says the accident occurred, she cannot
recover; if the plaintiff knew the place where she alighted contained depres-

sions or holes, and with this knowledge she jumped, she is guilty of contributory negligence, and cannot recover." The court replied: "I refuse to charge other than I have charged on that subject," and counsel for defendant duly excepted.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Winfred T. Denison, for appellant.

L. E. Warren, for respondent.

LAUGHLIN, J. The train had reached its regular stopping place at the plaintiff's destination. There was clearly an invitation for her to alight at that point. She had a right to alight, and was not obliged to allow herself to be carried beyond her home, and it was the duty of the defendant to afford her reasonable safety in alighting by either affording a reasonably safe place and facilities, or warning and aiding her in alighting, and it was her duty to exercise the care and caution of a reasonably prudent person with the knowledge that she possessed. Onderdonk v. N. Y. & S. B. R. Co., 74 Hun, 42, 26 N. Y. Supp. 310; Boyce v. Manhattan Ry. Co., 118 N. Y. 314, 23 N. E. 304; Fox v. Mayor, 5 App. Div. 349, 39 N. Y. Supp. 309; Cartwright v. Chicago G. T. Ry., 52 Mich. 606, 18 N. W. 380, 50 Am. Rep. 274; Werner v. Chicago & N. W. R. Co., 105 Wis. 300, 81 N. W. 416; Brodie v. Carolina Mid. Ry. Co. (S. C.) 24 S. E. 180; D., L. & W. R. R. Co. v. Perret, 60 N. J. Law, 589, 40 Atl. 1131; Patterson's Accident Law, §§ 261–263, and cases cited; Shearman & Redfield on Negligence (5th Ed.) vol. 2, §§ 509, 510. Even if the jury found that there were holes or depressions in the surface of the broken stone or gravel used as a platform for passengers to alight upon, they were scarcely warranted, on the testimony of the plaintiff, in finding that such holes or depressions had any causal connection with the injuries sustained by the plaintiff. They appear to have resulted from her jumping from the step of the car. If the plaintiff's foot did not strike upon level surface, or if she slipped on any loose stone or gravel, it would seem that she could have so testified. The jury should not be permitted to speculate and find that because there may have been holes or depressions at some points, her foot landed in one of them, without any evidence to substantiate it.

The case would therefore seem to hinge upon the question as to the height of the step above the surface of the ground between the tracks. If the step were of the usual height, there would seem to be no justification for the plaintiff's act in jumping from it on this occasion, when she had been able on all other occasions, both in the daytime and at night, to descend in safety without jumping, and in view of the fact that the conditions had remained the same for many years, and there is no evidence that any passenger ever sustained injuries in alighting upon the gravel or broken stone used as a platform prior to this time, negligence probably could not be imputed to the defendant. Lafflin v. Buffalo & Southwestern R. R. Co., 106 N. Y. 136, 12 N. E. 599, 60 Am. Rep. 433; I. C. R. R. Co. v. Hobbs, 58 Ill. App. 130; D., L. & W. R. R. Co., v. Napheys, 90 Pa. 135. If, however, the steps of this car were exceptionally high, and more than two feet above the surface

of the ground upon which she was required to alight, as indicated by her testimony and that of her cousin, the court, we think, would not be warranted in ruling, as matter of law, that she was guilty of contributory negligence, or that the defendant was free from negligence. If the railroad company furnished a car with a step so high that a passenger could not conveniently alight by stepping down, the jury would have been warranted in finding that it was guilty of negligence in not furnishing a platform or stepping box, or assisting passengers in alighting, or warning them of the danger, and assuring them that they would be afforded ample time to alight. Negligence could not be imputed, as matter of law, to the passenger who had a right to alight, and who determined that she could alight with greater safety by jumping than in attempting to step, or let her weight down steadying herself by taking hold of the rail with one hand. We are of opinion, however, that the weight and preponderance of the evidence shows that the step of this car was not of the extraordinary height above the rail testified to by the plaintiff and her cousin. Their testimony, at most, is an estimate or expression of opinion, and, in view of the positive testimony of the witnesses who made the measurements, it was entitled to little weight. It is not probable that the defendant had in use in its regular passenger service a car with steps nearly double the height of those of the ordinary passenger cars. Moreover, the verdict of the jury in finding the plaintiff free from contributory negligence also appears to be against the weight of the evidence. If the step of the car was unusually high, the plaintiff was aware of the fact. She could have crossed to the platform of the next car, and descended from that, or she could have allowed her escort to pass ahead and assist her, or she could have called upon the conductor, who, according to her evidence, was within speaking distance, to aid her. There is no evidence that it was necessary to hurry. The passengers were not urged to alight quickly. No signal appears to have been given for the train to start, and, for aught that appears, plaintiff could have had ample time, and would have been afforded, had she called upon the conductor, facilities for alighting in safety when she discovered that the step was too high for her to step to the ground. Other passengers used the step in safety, and, so far as appears, without finding it necessary to jump. It is not contemplated that passengers will jump from cars, and when they do and sustain injuries they should show some real necessity for taking that course in alighting.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur, except O'BRIEN, P. J., and PATTERSON, J., who dissent.